Date signed March 11, 2014



PAUL MANNES
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt**

| | |
|---|---|
| IN RE: : | |
| : | |
| KELLY LEE MAXSELL : | Case No. 13-11602PM |
| : | Chapter 7 |
| Debtor : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | |
| CAPITAL ONE, N.A. : | |
| Plaintiff : | |
| vs. : | Adversary No. 13-0300PM |
| : | |
| KELLY LEE MAXSELL : | |
| Defendant : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | |

**MEMORANDUM OF DECISION**

This is an action filed by the Plaintiff, Capital One, N.A. ("Capital One"), seeking an order that the final judgment in the sum of $267,760.78 in its favor entered by the Circuit Court for Frederick County, Maryland, in Case No.: 10-C-1-003011 be excepted from the discharge of the Debtor, Kelly Lee Maxsell ("Debtor" or "Defendant"), under 11 U.S.C. § 523(a)(6).

This case involves a residential refinance loan dated August 16, 2005, made by the Plaintiff's predecessor, Chevy Chase Bank, F.S.B., that was to be secured by a Deed of Trust for a residence. The Note was executed by the Debtor and her spouse, whose death on May 24, 2009, left her the sole owner of the house. Payments were made as required by the Note until the Spring of 2011, when the Debtor defaulted. In the process of its pre-foreclosure title search, the Plaintiff discovered that the Deed of Trust executed in connection with the loan had not been recorded and sought the Debtor's cooperation to accomplish the recording. Various letters were sent to her commencing on March 29, 2011, advising of this fact and of her obligations under an Error and Omissions Compliance Agreement to cure the deficiency. Meanwhile, on April 18, 2011, the Debtor entered into a Residential Contract of Sale for the property for the sum of

$420,000.00.  Settlement occurred on June 6, 2011.  After the payment of settlement charges, sales commissions and two secured obligations to MidAtlantic Farm Credit, ACA, both made after the Chevy Chase Bank, F.S.B. loan, the Debtor received the balance of the sales proceeds of $208,680.35.  Capital One received nothing.

What happened to the money the Debtor received?  Where did that money go?  The court cannot remember another case that presented a set of facts where the Debtor's own testimony put her squarely within the sights of a denial of discharge.  Section 727(a)(3) of the Bankruptcy Code provides:

> **§ 727 - Discharge**
>
> (a)  The court shall grant the debtor a discharge, unless --
>
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

The Debtor dealt in cash for nearly all of her financial transactions.  She testified that she used the money to pay her late husband's business obligations.  But, she could not produce a single receipt for these payments nor could she identify a single person to whom she paid the money.  Some money was given to her "boyfriend" to repay him for expenses incurred for their joint living expenses.  Even assuming that to be true, the vast majority of the money is unaccounted for.  In order to receive the massive relief of a bankruptcy discharge, a debtor has the duty to preserve records.  As pointed out in *In re Connors*, 273 B.R 764, 769-70 ( S.D. Ill. 2001):

> One of the central aims of our bankruptcy system is to give honest debtors a "fresh start" by relieving them of debts incurred prior to filing for bankruptcy relief.  *In re Scott*, 172 F.3d 959, 966 (7th Cir.1999) *citing Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  It is important to recognize, however, that a discharge in bankruptcy is a privilege, not a right and should only inure to the benefit of the honest debtor.  *In re Juzwiak*, 89 F.3d at 427.  Accordingly, the privilege of discharge is necessarily dependent on a true presentation of the debtor's financial affairs.  *In re Scott*, 172 F.3d at 969.
>
> * * *
>
> In other words, 11 U.S.C. § 727(a)(3) requires as a precondition to discharge that the debtor produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present."  *In re Juzwiak*, 89 F.3d at 427.

Because courts and creditors should not be forced to undertake an independent investigation of the debtor's affairs, speculate as to the financial history or condition of the debtor, or sift through documents in order to attempt to reconstruct the flow of the debtor's assets, they have a right to be supplied with dependable information on which they can rely in tracing a debtor's financial history. *Id*. at 429.  Therefore, the debtor's duty under 11 U.S.C. § 727(a)(3) does not merely require that the debtor turn over any records he has. *In re Scott*, 172 F.3d at 969.  Rather, this language places an affirmative duty on the debtor to create books and records which accurately document the debtor's business affairs. Id. "In the absence of § 727(a)(3), debtors without proper books and records could obtain a discharge while frustrating the trustee's ability to liquidate pre-petition assets to satisfy pre-petition debts." *Id*.

The Debtor's explanation of her failure to keep records and her financial transactions is unworthy of belief and this finding goes as well to most of the rest of her testimony.  The Debtor would have the court believe that she went through over $200,000.00 in slightly over a year and a half, unable to produce a single record of these transactions.  Discharge is a privilege, "dependent on a true [and complete] presentation of the debtor's financial affairs." *In re Cox*, 904 F.2d 1399, 1401 (CA9 1990) *quoting In re Underhill*, 82 F.2d 258, 260 (CA2 1936).  At a minimum, a debtor must maintain and preserve adequate records that make it possible to ascertain her financial affairs and material business transactions. *In re Caneva*, 550 F.3d 755, 761-62 (CA9 2008).  This debtor failed miserably in fulfilling this requirement.  She is employed as a Loan Specialist at Wells Fargo Bank and not the financial *babe in the woods* she paints herself to be. The circumstances of this case do not justify her failure to maintain records.[1]

* * *

However, this complaint was brought under 11 U.S.C. § 523(a)(6), that provides:

**§ 523 - Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

> (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

---

[1] The court observes that in her Chapter 7 case the Debtor scheduled one secured claim for a car loan and scheduled three unsecured claims – Capital One ($247,201.00), Key Bank ($21,891.00) and Kohl's department store ($85.00).  The debt owed to Key Bank is said to be from March 1, 2000 and "charged off account."  Clearly, the Chapter 7 case was filed to deal Capital One's claim as the debt to Key Bank is old and barred by the statute of limitations.

The Debtor's actions fall within this exception to discharge. She knowingly took advantage of the failure of Chevy Chase Bank, F.S.B. to oversee the recording of the Deed of Trust, a situation not unlike the case of *In re Levasseur*, 737 F.3d 814, 818-19 (CA1 2013), where the debtor took advantage of Bank of America's failure to close a Home Equity account. There the court noted:

> Section 523(a)(6) of the Bankruptcy Code exempts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added). An injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997) (*quoting* 4 COLLIER ON BANKRUPTCY ¶ 523.12 (15th ed.1996)). The injury must have been committed in "conscious disregard of one's duties." *Id*. Willfulness requires "a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question." *In re Neronha*, 344 B.R. 229, 231 (Bankr.D.Mass.2006).
>
> The record abundantly supports the bankruptcy court's determination that Levasseur's "objectively wrongful" actions, "committed in conscious disregard of her duty not to deceive," *Levasseur*, 482 B.R. at 32, were malicious. Likewise, the willfulness requirement was satisfied by Levasseur's deliberate use of a false pretense – that the Home Equity Line was and should still have been available to her following the Rowley Property sale – to obtain $124,200 from Bank of America.
>
> Further, our decision in *Printy* supports this result. The debtor in *Printy* took advantage of a stock brokerage's computer error, which incorrectly credited his account an extra $3.5 million, by withdrawing and borrowing against funds that the debtor knew he did not own. 110 F.3d at 859-60. So too here: Levasseur took full advantage of Bank of America's error in failing to close her Home Equity Account when she sold the Rowley property and gave the Bank no notice of the sale. The bankruptcy court was correct to find the debt to be non-dischargeable, and we affirm on those grounds. We need not reach the other grounds for non-dischargeability under § 523(a).

After being told that the Deed of Trust had not been recorded, the Debtor ignored her obligation under the Errors and Omissions Agreement and deliberately set about to appropriate the equity in the subject property. She accomplished this by selling the subject property and pocketing the proceeds. The deliberate nature of this act is apparent from her testimony at trial. She stated that she placed the letters from Mid-Atlantic Title Consultants, LLC (Plaintiff Ex. 8), a firm employed by the title company to correct the error, in the hands of the realtor, Kenneth A. Grant, employed by her to sell the property. She testified that Mr. Grant said he would take care of it, and that she relied entirely upon him. The inference the Debtor would like the court to make is that she was unaware of the consequences of the recording failure and that she had no

intent to harm the holder of the refinancing note, as Mr. Grant was in charge of ironing things out.  However, when called as a witness on her behalf, Mr. Grant testified that he was not familiar with the letters before they were presented to him for examination at the trial.  This leads the court to conclude that she knew that by selling the property and pocketing the proceeds, she could deprive Capital One of its right to the money.  This was done on purpose and not by accident.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity."  In the context of 11 U.S.C. § 523(a)(6), "willful" means "deliberate or intentional."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998); *see also St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (CA4 1985).  Malice does not require a showing of ill will, merely an intent to harm; it is an injurious act done deliberately and intentionally in knowing disregard of the rights of another.  Here, the Debtor knew the consequences to the creditor of her act in selling the property, and that it was certain to cause harm.  As in the case of *In re Garcia*, 442 B.R. 848, 851-52 (B.C. M.D. Fla. 2011), relied upon by the Plaintiff, the Debtor knew what was required of her and knew the harm caused to Capital One by her sale; yet, she proceeded.

The Plaintiff has carried its burden of proving by a preponderance of the evidence standard set out in *Grogan v. Garner*, 498 U.S. 279, 291 (1991) that its claim against the Debtor should not be discharges; however, the court will limit the judgment to the amount of money received by the Debtor at settlement.

An appropriate order will be entered in accordance with the foregoing.

cc:	Plaintiff
	Plaintiff's Counsel
	Defendant
	Defendant's Counsel
	Office of the United States Trustee

**End of Memorandum of Decision**